FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2004 JUN 23 P 2: 26

SIGN

BY DEPUTY CLERK



| | |
|---|---|
| **UNITED STATES OF AMERICA** <br> *Plaintiff* | : **CIVIL ACTION NO.: 04-5-D-M1** <br> : <br> : |
| **versus** | : **DISTRICT JUDGE JAMES J. BRADY** <br> : |
| **8.34 ACRES OF LAND, MORE OR LESS,** <br> **SITUATED IN ASCENSION PARISH,** <br> **STATE OF LOUISIANA, AND AJL** <br> **ENTERPRISES, INC., ET AL** | : <br> : <br> : <br> : **MAGISTRATE STEPHEN C. RIEDLINGER** |
| *Defendants* | : <br> : |

## MEMORANDUM ON BEHALF OF AJL ENTERPRISES INC., IN SUPPORT OF ITS REQUEST FOR A PRETRIAL CONFERENCE

### INTRODUCTION

This suit involves a "direct taking" by the United States of property owned by AJL Enterprises, Inc. The property taken by the government includes a 8.34 acre tract and an access servitude of about 1475 feet in length and 20 feet in width. The "taking" occurred on October 1, 2001. The government's suit for a determination of the compensation due to AJL was not filed until January 6, 2004. As will be shown below the government has unduly delayed AJL's efforts to obtain compensation for the loss of its property.

The Scheduling Order, issued by the Magistrate on May 7, 2004 in this matter provides for deadlines with respect to discovery, offers and the exchange of expert reports. No date, however, was set for a pretrial conference or a trial. The deadline for discovery of expert reports is October 6, 2004. On October 1, 2004 it will be 3 years since the government's taking occurred. AJL's inability to use its property has caused AJL significant economic hardship. Not allowing AJL to request a pretrial conference until after October 6, will only further delay this matter.

| INITIALS | DOCKET# |
|---|---|
| SH | 19 |



1

Federal Rule of Civil Procedure, 71A (j) provides that the court and attorneys "shall expedite" the procedure for compensation. In this case the property was taken two and a half years before the suit was even filed. The need for an expedited procedure in this case is even greater. AJL urges the court that in light of the facts and law cited below the request for a pretrial conference at the earliest possible date is both reasonable and justified.

## BACKGROUND

AJL is a family owned business which along with its two subsidiaries, Industrial Plant Maintenance, Inc., and Industrial Fill Materials, Inc., provides services and materials to industrial customers. One of AJL's primary sources of revenue is the sale of fill-dirt for the use of foundations and berms. AJL owns a tract of land in Ascension Parish referred to herein as the dirt-pit that contains approximately 75 acres. The soil on the dirt-pit has unique qualities and characteristics that are ideal for industrial use. For approximately 15-years AJL has excavated and sold fill-dirt from the dirt pit. Most of the fill-dirt from the dirt-pit has been excavated. The 8.34 acres and the access servitude at issue in this case are adjacent to AJL's dirt pit.

AJL purchased the 8.34 acre tract and the land in the access servitued several years ago for the purpose of excavating and selling the soil as part of its dirt-pit operation. At the time AJL purchased the 8.34 acre tract the land was subject to a lease by the United States (FAA). The FAA's lease expired on September 30, 2001. As of October 1, 2001 the FAA\United States had absolutely no legal right whatsoever to the use of the 8.34 acre tract or the access servitude. After the expiration of the lease AJL made numerous demands for the FAA to vacate the premise. The FAA not only refused to comply with AJL's demand to vacate, but advised AJL that it would initiate criminal proceedings against AJL if it made any attempt to interrupt the FAA's use of the property. Although the FAA's threat to file criminal charges appeared to be without merit, AJL, understandably, did not want to risk having to fight criminal charges by the United States. As a result AJL has to been able to use the property in the 8.34 acre tract and the access servitude.

2

In 2001, 2002 and 2003 the FAA advised AJL that it intended to file the necessary legal action to acquire the 8.34 acre tract and servitude. AJL encouraged the FAA to file the suit so that AJL could be compensated for the taking. (AJL's understanding of the law is that in order for it to initiate an action against the FAA for the trespass the suit would have to be filed in the Court of Claims in Washington D.C.)

Despite the FAA's threats to file suit no action was taken by the FAA in 2001, 2002 or 2003. In late 2003, in desperation, AJL contacted its congressman for assistance. Shortly after the congressman began inquiring into the matter the United States filed suit on January 6, 2004. In paragraph 7 of its pleadings the United States admitted that the "taking" of the 8.34 acre and access servitude was effective as of October 1, 2001. It is undisputed that the United States has prevented AJL from the use of its property since October 1, 2001. It is also undisputed that AJL has not received any payment for the taking.

## FAA APPRAISALS

In October 2002 the FAA requested permission from AJL to have an appraiser enter the property for the purpose of appraising the property. AJL immediately granted permission and understands that an appraisal was provided to the FAA. In 2003 the FAA made a second request to AJL for another appraiser to enter the property for appraisal purposes. AJL again granted permission and understands that a second appraisal was provided to the FAA. AJL has not received any information as to the results of either appraisal despite written requests and formal discovery. The government has informed AJL that it is now working on obtaining a third appraisal.

## U. S. DEPOSITS

On January 7, 2004, the United States deposited the sum of $69,500 into the registry of the court in this matter. On February 3, 2004, the government deposited the sum of $65,873 into the registry of the court. Neither deposit has been paid to AJL. No explanation was given by the government as to how

3

the deposited sums were determined or why a second deposit was made in less than a month after the initial deposit.

AJL urges the court that the deposits by the U. S. did not comply with 42 USC 4651(3) set forth below. AJL will also show the court in this memorandum and at the trial of the matter that United States is aware that the deposits it has made represent approximately one-tenth (1/10) of the value of the property taken.

## INFORMATION PROVIDED BY AJL

Over the past two and half years AJL has done everything it can to *expedite*, as provided by law, the resolution of this matter. In addition to granting permission to the government's two appraisers to enter the property, AJL has provided the government with the following information and records:

1. Soil test analysis for the past ten years on the dirt-pit immediately adjacent to the 8.34 acre tract.
2. A detailed engineering report reflecting the amount of fill-dirt AJL will be prevented from using as a result of the government's taking of the 8.34 acre tract and the access servitude. This engineering report also provided Louisiana Department of Transportation and Development records pertaining to the value of the type of soil located immediately adjacent to the 8.34 acre tract taken.
3. Photographs of the dirt-pit showing the extensive excavation that has occurred over the past 15 years on the dirt-pit owned by AJL and immediately adjacent to the 8.34 acre tract.
4. Hundreds of AJL's invoices for the sale of the fill-dirt during the period of six months before and six months after the date of the government's taking of October 1, 2001.
5. Invitations to the government to view the property and the adjacent dirt-pit. (The government has never accepted the invitation.)
6. An affidavit from the President of AJL as to how its dirt business operates, including the cost of operations.

## AJL's SETTLEMENT ATTEMPTS

On February 21, 2004 AJL's counsel made a written offer to settle the claim. The offer included a detailed engineering analysis as to the amount of fill-dirt that could be obtained from the 8.34 acre tract and the revenue and profit AJL could earn from the sale. This offer included an estimate of the

4

value of the access servitude being taken. No counter-offer or response to the calculation method was received from the government.

On May 21, 2004 AJL's counsel made another written offer. This offer included the engineering records that showed the amount of fill-dirt that AJL could obtain from the property in the access servitude. On June 17, AJL's counsel was informed by the U.S. attorney that although the evaluation process of AJL's offer was not completed, the offer would be rejected. AJL's counsel was also informed by the U.S. attorney that she was advised by her superiors to suggest to AJL's counsel that he should consider withdrawing his settlement offer of May 21. No explanation was provided with respect to the suggestion that AJL's offer should be withdrawn and AJL's counsel is at a complete loss to understand the purpose of the suggestion.

## VALUE OF FILL-DIRT

AJL's engineering report, provided to the government, reflects that as a result of the government's taking AJL will be prevented from selling over Three Hundred and Eighty thousand cubic yards of fill-dirt. AJL has provided the government with hundreds of invoices for a six-month period before and after the date of taking. The invoices reflect that AJL sold fill-dirt from the dirt-pit for $2 to $4 per cubic yard with the most common price being $3.50 per yard. AJL has provided to the government a sworn affidavit from the President of AJL that its cost in the sale of the fill-dirt is approximately $.50 per yard. AJL's loss from the government's taking is in excess of one million dollars.

The government has advised AJL that the current interest rate applicable to any award AJL may eventually receive is 1.22 %. We ask the court to consider the impact on a company that is being denied or delayed in obtaining over one million dollars of revenue-- and that will only recover 1.22% on the money once it is awarded.

5

## APPLICABLE LAW

Federal Rules of Civil Procedure, 71A(j) provides as follows:

> The plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain; and, although not so required, may make a deposit when permitted by statute. *In such cases the court and attorneys shall expedite the proceedings for the distribution of the money so deposited and for the ascertainment and payment of just compensation.* (Emphasis supplied).

42 USC 4651 provides in part:

> (3): Before the initiation of negotiations for real property, the head of the Federal agency concerned shall establish an amount which he believes to be just compensation therefor and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property…*The head of the Federal agency concerned shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation. Where appropriate the just compensation for the real property acquired and for damages to remaining real property shall be separately stated*….(Emphasis added).

> (7) In no event shall the head of a Federal agency either advance the time of condemnation, *or defer negotiations or condemnation and the deposit of funds in court for the use of the owner, or take any other action coercive in nature, in order to compel an agreement on the price to be paid for the property*…(Emphasis added).

> (8) If any interest in real property is to be acquired by exercise of the power of eminent domain, the head of the Federal agency concerned shall institute formal condemnation proceedings. *No Federal agency head shall intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.* (Emphasis added).

## SUMMARY

The United States admits it took the land from AJL as of October 1, 2001. The United States did not file suit until January 6, 2004, two and half years after the taking. The government has had two appraisals performed and now claims to be working on a third appraisal. AJL has made informal and formal discovery requests for information about the government's appraisals. Each request was denied. AJL has made every attempt to provide the United States with all pertinent information without the need of a request from the government. AJL has made attempts to settle this matter, to no avail.

AJL suggest to the court that the undisputed facts in this matter demonstrate that the compensation payment to AJL has been unduly delayed. AJL urges the court that the government has certainly not complied with Rule 71A providing that the proceeding should be expedited. AJL urges the court that the fact that the property was taken from AJL over 2 1\2 years before the government's suit was even filed is further grounds to expedite this proceeding. AJL request that the court set this matter for the earliest possible pretrial conference after the October 6, 2004 deadline set in the Scheduling Order and that the court take whatever other steps are necessary to *expedite* this matter as provided by law.

RESPECTFULLY SUBMITTED:

BREAUX & HORNSTEIN

BY: _Phil Breaux_

Phil Breaux
Attorney At Law
Bar No. 3424
P.O. Box 116
St. Gabriel, Louisiana 70776
Phone: (225)642-5532

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon the following counsel by mailing the same properly addressed and postage prepaid to:

United States Department of Justice
United States Attorney's Office
ATTN: Ms. Tara Hingle
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801

this 23 day of _JUNE_____, 2004.

_Phil Breaux_
Phil Breaux

7